Bradley T. Hunsicker (Wyoming Bar No. 7-4579)
Jennifer Salisbury (Wyoming Bar No. 7-5218)
Markus Williams Young & Hunsicker LLC
106 East Lincolnway, Suite 300
Cheyenne, WY 82001
Telephone: (307) 778-8178
Facsimile: (307) 638-1975
bhunsicker@MarkusWilliams.com
jsalisbury@MarkusWilliams.com

PROPOSED ATTORNEYS FOR
MORIAH POWDER RIVER, LLC

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: ) | |
| ) | Case No. 19-20699 |
| US REALM POWDER RIVER, LLC ) | |
| f/k/a MORIAH POWDER RIVER, LLC ) | |
| EIN 47-4520716 ) | Chapter 11 |
| ) | |
| Debtor-in-Possession. ) | |

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL

US Realm Powder River, LLC, f/k/a Moriah Powder River, LLC, debtor-in-possession herein (the "Debtor"), through its undersigned proposed counsel, hereby requests that the Court enter interim and final orders authorizing the use of cash collateral and in support thereof states as follows:

### PRELIMINARY STATEMENT

1. After good-faith, arm's length negotiations, the Debtor reached an agreement with Powder River VPP, LLC ("Lender") for the consensual use of cash collateral. The purpose of the use of cash collateral is to fund the Debtor's operations

{Z0295448/1 }   1

and reorganization expenses to get the Debtor through confirmation of a proposed plan of reorganization.

2. The Debtor anticipates generating cash through its operations which will constitute the collateral of the Lender (the "Cash Collateral"). With the consent of the Lender, the Debtor intends to use Cash Collateral to fund its operational and reorganization expenses.

3. Immediate access to the use of Cash Collateral will enable the Debtor to continue to operate its business, prevent immediate and irreparable harm to the estate and preserve and enhance the value of the Debtor's assets as the Debtor moves forward with its reorganization efforts. Accordingly, the Debtor requires interim and final approval for the use of Cash Collateral.

## JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the District of Wyoming (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory basis for the relief requested herein is sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL BACKGROUND

### A. General Background

7. On October 31, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in this Court.

8. The Debtor is a privately held natural gas company with headquarters in Sheridan, Wyoming and operates in the Powder River Basin located in northeast Wyoming. The Debtor holds significant mineral leases (the "Gas Leases") and owns approximately 6,800 coal-bed methane gas wells (approximately 3,900 are currently producing) (the "Gas Wells"). The Gas Leases are entered into with the owners of certain real property. The Gas Leases provide the Debtor with the right to exploit the natural gas reserves under the surface of the real estate.

9. While the Debtor holds the Gas Leases and owns the Gas Wells, the Debtor relies on services provided by its affiliates, Powder River Midstream, LLC ("PRM") and Carbon Creek Energy, LLC ("CCE"), in order to produce natural gas. PRM provides the Debtor with pipeline assets and midstream services while CCE is the contract operator of the Gas Wells and employs approximately 180 employees in order to serve the needs of the Debtor.[1]

10. The Debtor continues to operate its businesses as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of this Motion, the United States Trustee has not appointed any official committees in this case, and no request has been made for the appointment of a trustee or examiner.

11. The Lender has consented to the Debtor's use of Cash Collateral, subject

---

[1] Pursuant to a Management Services Agreement with CCE dated September 1, 2015, CCE is responsible for paying the Mineral Payments and Working Interest Disbursements described herein on behalf of the Debtor (after receiving payment from the Debtor).

to the entry and terms of the Interim Order and Final Order, as applicable.

**B. Prepetition Credit Agreement**

12.  On September 1, 2015, the Debtor, as borrower, entered into that certain Credit Agreement for Senior Secured Revolving Credit Facility and Senior Secured Bridge Loan (as amended or restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement") with certain lenders (collectively, the "Prior Prepetition Lenders") and Societe Generale, as administrative agent and issuing bank (the "Administrative Agent").  The Prepetition Credit Agreement is guaranteed by CCE (the "Guarantor").

13.  The Prepetition Credit Agreement provided the Debtor with a reserve-based revolving credit facility and other commitments in an aggregate principal amount of up to $210 million. The Lender asserts that pursuant to (i) a Guaranty and Collateral Agreement made by the Debtor in favor of the Administrative Agent dated September 1, 2015 and (ii) certain recorded Mortgages, Assignments of As-Extracted Collateral, Security Agreements, Fixture Filings and Financing Statements made by the Debtor in favor of the Administrative Agent dated September 1, 2015, all amounts outstanding under the Prepetition Credit Agreement are secured by a first-priority security interest (the "Prepetition Liens") in substantially all of the Debtor's assets (collectively, the "Prepetition Collateral").

14.  Pursuant to that certain Successor Agent and Issuer Agreement dated as of June 26, 2018, Societe Generale resigned as the Administrative Agent under the Prepetition Credit Agreement, and West Texas National Bank ("WTNB") was appointed

by the Prior Prepetition Lenders as the successor Administrative Agent under the Prepetition Credit Agreement, and WTNB accepted such appointment.

15. Pursuant to (i) those certain Assignment and Assumption Agreements, by and between each of the Prior Prepetition Lenders, as assignor, and Mutual of Omaha Bank ("Omaha Bank"), as assignee, all dated as of June 26, 2018, (ii) those certain Assignment and Assumption Agreements, by and between each of the Prior Prepetition Lenders, as assignor, and WTNB, as assignee, all dated as of June 26, 2018, and (iii) that certain Assignment and Assumption Agreement, by and between Omaha Bank, as assignor, and WTNB, as assignee, dated as of October 12, 2018, WTNB acquired one hundred percent (100%) of the Debtor's debt obligations under the Prepetition Credit Agreement and related Prepetition Liens from the Prior Prepetition Lenders and Omaha Bank.

16. On October 12, 2018, the Debtor and WTNB, as Administrative Agent and the then sole lender under the Prepetition Credit Agreement, entered into a Forbearance Agreement with respect to the Prepetition Credit Agreement.

17. On July 10, 2019, pursuant to an Assignment and Assumption Agreement, Lender purchased and acquired one hundred percent (100%) of the Debtor's debt obligations under the Prepetition Credit Agreement and related Prepetition Liens from WTNB. On July 10, 2019, WTNB resigned as the Administrative Agent under the Prepetition Credit Agreement, and Lender was appointed as the successor Administrative Agent under the Prepetition Credit Agreement, and Lender accepted such appointment.

18. On July 10, 2019, the Lender and Debtor, among other parties, entered into a Purchase and Sale Agreement (the "VPP Purchase Agreement").

19. Pursuant to the VPP Purchase Agreement, on July 10, 2019, (i) the Lender and Debtor entered into certain recorded Conveyances of Term Overriding Royalty Interest (the "Conveyances"), whereby Debtor conveyed to Lender Term Overriding Royalty Interests in the Gas Leases (the "ORRIs"), and (ii) the Lender, Debtor, as grantor, and CCE, as operator, entered into a Production and Delivery Agreement, whereby Debtor and CCE agreed, among other things, to deliver the ORRIs to the Lender in accordance with Schedule 1 of the Conveyances.

20. On July 10, 2019, the Lender and Debtor entered into a Forbearance Agreement whereby subject to certain conditions, Lender agreed to forebear from exercising any of its rights and remedies under the Prepetition Credit Agreement or other related loan documents, in exchange for, *inter alia*, its timely receipt of payments related to the ORRIs granted to Lender pursuant to the Conveyances on a monthly basis (the "VPP Payment").

21. As of the Petition Date, the outstanding principal amount due under the Prepetition Credit Agreement was in an amount of no less than $80,205,994.25, exclusive of certain pre-petition and post-petition interest, attorney's fees, and other costs and expenses.

22. The Lender asserts that all of the Debtor's deposit accounts and account receivables are subject to the Prepetition Liens and constitute Cash Collateral.

### C. Other Secured Debt

23.   In the ordinary course of business, the Debtor routinely transacts business with a number of third-party contractors and vendors who may seek to assert liens against the Debtor and its property (Gas Leases and Gas Wells) if the Debtor fails to pay for the goods delivered or the services rendered.  These parties perform various services for the Debtor, including, without limitation, supplying oil and gas related services and transporting the Debtor's gas production.

### D. Negotiations Regarding the Use of Cash Collateral

24.   Prior to the Petition Date and post-petition, the Debtor and the Lender have participated in arms' length negotiations regarding the terms and conditions of a proposed consensual cash collateral order.  These efforts resulted in an agreement with the Lender regarding the consensual use of Cash Collateral that is reflected in the proposed Order.  As part of the consensual arrangement, and as adequate protection for any diminution in value during this case, the Debtor has agreed to provide the Lender with an adequate protection package that includes Adequate Protection Liens, Superpriority Claims, and budget and reporting requirements.

### RELIEF REQUESTED

25.   The Debtor requests the ability to use cash receipts and equivalents constituting the Cash Collateral of the Lender.  Specifically, the Debtor requests entry of the Interim Order, substantially in the form attached hereto as **Exhibit A**, and, following the Final Hearing, the Final Order (attached hereto as **Exhibit B**),

>   (a) authorizing the use of Cash Collateral, as such term is defined in Section 363(a) of the Bankruptcy Code, of the Lender, pursuant to

Section 363(c) of the Bankruptcy Code, on an interim basis and upon the terms and conditions set forth in this Interim Order during the period following the date of commencement of this Chapter 11 Case and pending the Final Hearing;

(b) granting adequate protection to the Lender pursuant to Sections 361 and 363(e) of the Bankruptcy Code on account of the Lender's interests in the Prepetition Collateral and on account of the Debtor's use of Cash Collateral, and any diminution in value of the Prepetition Collateral resulting therefrom;

(c) modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the Lender to implement and effectuate the terms and provisions of this Interim Order and the Final Order; and

(d) requesting that the Final Hearing be scheduled by the Court no later than 35 days following entry of this Interim Order to consider entry of the Final Order authorizing on a final basis, inter alia, the use of Cash Collateral and the provision of adequate protection of Lender's interests in the Prepetition Collateral.

## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

### A. The Court Should Authorize the Debtor to Use Cash Collateral and Provide Adequate Protection.

26. A debtor's use of property of the estate, including cash collateral, is governed by Bankruptcy Code Section 363. Pursuant to Bankruptcy Code section 363(c)(2), a debtor may only use cash collateral subject to the consent of all entities that have an interest in the cash collateral or the grant of adequate protection. 11 U.S.C. § 363(c)(2). Bankruptcy Code Section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

27. Generally, what constitutes adequate protection is decided on a case-by-case basis. *In re DB Capital Holdings, LLC*, 454 B.R. 804, 822 (Bankr. D. Colo. 2011) (*citing In re Becker Indus.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)) (the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process"); *see also In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996).

28. The Debtor has agreed to provide the Lender with adequate protection that includes: (a) the timely payment of the VPP Payment on a monthly basis; (b) granting of Adequate Protection Liens on all property and assets of the Debtor; (c) granting of allowed Superpriority Claims solely to the extent of the aggregate diminution in value of the Lender's interest in the Prepetition Collateral from and after the Petition Date, if any; and, (d) certain other budget and reporting requirements.

29. Consistent with the purposes underlying the provision of adequate protection, the proposed Interim Order provides the Lender with adequate protection (as set forth in detail above) to protect the Lender from any diminution in value of their interests during the pendency of this Chapter 11 Case. As noted above, the Lender has consented to the use of Cash Collateral on the terms set forth in the proposed Interim Order.

30. This Court should authorize the Debtor's use of Cash Collateral as the Lender is adequately protected under the terms of the proposed Order and has consented

to the use of Cash Collateral in accordance with the terms of the Interim Order and Final Order.

### B. The Debtor's Need to Access Cash Collateral

31.  The Debtor needs the Cash Collateral to pay operating expenses associated with its business operations, all in accordance with the Budget (as defined below). Indeed, absent such relief, the Debtor's business will be brought to an immediate halt, with damaging consequences for the Debtor and its estate and creditors.

32.  The Debtor's use of Cash Collateral is critical to preserve the value of its assets and property during the Chapter 11 Case and will avoid immediate and irreparable harm to the Debtor's estate and creditor. The use of Cash Collateral constituting proceeds of the Prepetition Collateral generated following the Petition Date will also allow the Debtor to avoid the increased costs and administrative burdens that would follow if the Debtor were required to immediately segregate and not use its operating cash. The terms and conditions on which the Debtor may use Cash Collateral have been carefully designed, and extensively negotiated, to meet the dual goals of Bankruptcy Code Sections 361 and 363. If the Interim Order is entered, the Debtor will have ample working capital to operate its busines and provide an opportunity to maximize value for the benefit of its stakeholders. At the same time, the Lender will be adequately protected with the Adequate Protection Liens on all assets of the Debtor and Superpriority Claims.

33.  As discussed above, a significant portion of the Prepetition Collateral consists of the Debtor's oil and gas properties and related assets which includes the

hydrocarbons extracted by the Debtor from those properties and the proceeds generated from sales thereof. The Debtor's business model is predicated upon its ability to exploit its hydrocarbon assets, bring them to market, and use the proceeds in its business operations. Thus, the orderly continuation of the Debtor's operations and the preservation of its going concern value are largely dependent upon its ability to regularly convert the Prepetition Collateral into Cash Collateral and use it in its operations.

34. The Debtor has prepared a budget showing sources and uses of cash necessary for the Debtor's operations on a monthly basis for the first six (6) months of this Chapter 11 Case (as such budget may be modified from time to time by the Debtor, the "Budget"), a copy of which is attached hereto as **Exhibit C**. Specifically, the Budget shows the Debtor's forecasted receipts and disbursements from the Petition Date through April, 2020 (such initial six-month period, the "Budget Period"). As set forth in the Interim Order and the Budget, the Debtor intends to use Cash Collateral for, among other things, working capital, general corporate purposes, and administrative costs and expenses of the Debtor incurred in the Chapter 11 Case.

35. As set forth in the Interim Order, the Debtor will adhere to the Budget during the Budget Period, subject to its ability to: (i) carry over any amounts not expended for monthly budgeted items not paid through any subsequent month within a six-week period thereafter, (ii) expend up to 5% more than the budgeted amount (plus any permitted Carry Forward) for a specific month in such month so long as the aggregate expenditures during the Budget Period do not exceed the total shown on the

Budget for such interim period by more than 5%, and (iii) pay amounts incurred from and after the Petition Date, in addition to or for categories not listed in the Budget with the prior written consent of the Lender.

### C. The Debtor's Interim Use of Cash Collateral Should be Approved.

36. Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use Cash Collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, a bankruptcy court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2). Bankruptcy Code Section 363(c)(3) authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [Bankruptcy Code Section 363(e)]." 11 U.S.C. § 363(c)(3).

37. In this case, immediate and irreparable harm would result if the relief requested in the Motion is not granted on an interim basis. Absent use of the Prepetition Collateral, including the Cash Collateral, the Debtor will simply be unable continue the orderly operation of its business. As such, use of the Prepetition Collateral, including the Cash Collateral, is necessary to the Debtor's ability to preserve and maintain its going-concern value for the benefit of all parties in interest. Failure to grant the relief requested herein on an interim basis would result in immediate and irreparable harm to the Debtor's estate.

38. Based on the foregoing, the Debtor respectfully submits that it has

satisfied the requirements of Bankruptcy Rule 4001 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis. Accordingly, the Debtor seeks immediate authority to use the Prepetition Collateral and Cash Collateral, pursuant to the terms and conditions in the Interim Order to prevent immediate and irreparable harm to the Debtor's estate pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

### WAIVER OF BANKRUPTCY RULE 6004(H)

39. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### RESERVATION OF RIGHTS

40. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365; or (e) otherwise affect the Debtor's rights under Bankruptcy Code Section 365 to assume or reject any executory contract with any party subject to this Motion.

# NOTICE

41. Notice of this Motion shall be given to the Debtor's Limited Service List by overnight mail within 24 hours of filing and as otherwise ordered by the Court at the interim hearing. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

# CONCLUSION

The Debtor respectfully request that the Court (a) enter orders, substantially in the forms annexed hereto, granting the relief requested in this Motion on an interim basis, (b) schedule a final hearing on this Motion within thirty-five (35) days or as soon as is otherwise practicable to consider entry of the Final Order, and (c) grant such other and further relief as may be just and proper.

Dated: November 26, 2019
    Cheyenne, Wyoming

        MARKUS WILLIAMS YOUNG AND
        HUNSICKER LLC

        By: /s/ *Bradley T. Hunsicker*
        Bradley T. Hunsicker (WY Bar No 7-4579)
        106 East Lincolnway, Suite 300
        Cheyenne, WY 82001
        Telephone: 307-778-8178
        Facsimile: 307-638-1975
        Email: bhunsicker@markuswilliams.com

        *Proposed Counsel for the Debtor and Debtor-in-Possession*

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2019, I caused a true and correct copy of the foregoing **MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL** to be served, electronically, upon the parties indicated below via the Court's CM/ECF system:

**Daniel J. Morse**
Assistant U.S. Trustee
308 West 21st Street, Room 203
Cheyenne, WY 82001
daniel.j.morse@usdoj.gov

*/s/ Bradley T. Hunsicker*
Bradley T. Hunsicker